Because I believe that the majority has erred in denying plaintiff a second opinion regarding the need for further diagnostic testing, I respectfully dissent.
Plaintiff experienced neck and left arm pain following a compensable injury by accident in September 2003, undergoing neurosurgery with Dr. Tucci in October 2003. Plaintiff has continued to suffer neck pain since his January 2004 release by Dr. Tucci, and plaintiff has additionally experienced right shoulder pain and numbness since at least June 2004. Plaintiff's neck and right shoulder pain is presumptively related to plaintiff's injury by accident pursuant to Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997). It follows that defendants are obligated to provide plaintiff with such medical compensation "as may reasonably be required to effect a cure or give relief," N.C. Gen. Stat. § 97-2(19), for plaintiff's continuing neck and shoulder pain.
Because of his continuing neck and shoulder pain, plaintiff returned to Dr. Tucci's office in January 2005 on the referral of his family physician, Dr. Crawford. After examination by Dr. Tucci's PA, Dr. Tucci recommended plaintiff undergo a new cervical myelogram and post-myelogram CT scan. However, defendant-carrier refused to pay for the diagnostic testing. Upon plaintiff's return to Dr. Tucci's office in February 2005, Dr. Tucci reversed his earlier recommendation, concluding instead that there was nothing further he could do for plaintiff's condition and that further diagnostic testing was unnecessary. Plaintiff, continuing to suffer neck and shoulder pain, sought a second opinion from another neurologist regarding whether further diagnostic testing might be useful, but defendant-carrier refused to authorize it. Plaintiff now comes before the Commission seeking approval for such a second opinion and, should the second opinion be that diagnostic testing would be appropriate, approval for such diagnostic testing itself.
I believe the majority has erred in finding as fact that Dr. Crawford "confirmed" that further diagnostic testing would only reinforce what he and Dr. Tucci already knew, because that finding of fact has no support in the evidence of record. Dr. Crawford testified that he has been unable to help plaintiff with his continuing neck and shoulder pain, and that he recommends that plaintiff be seen by another neurosurgeon other than Dr. Tucci. When asked whether another neurosurgical evaluation is reasonably necessary to effect a cure or give relief, Dr. Crawford testified, "I don't know whether it would effect a cure, but it might just reinforce what we already know." It is clear from Dr. Crawford's testimony that he considers himselfunqualified to give any opinion regarding plaintiff's neurological condition, and that he does not know whether further diagnostic testing would confirm or refute Dr. Tucci's current assessment of the matter.
Because plaintiff is entitled to any medical treatment reasonably expected to effect a cure or give relief to plaintiff's neck and shoulder pain, because Dr. Tucci has maintained that there is nothing more he can do to help plaintiff, and because plaintiff's family physician has recommended that plaintiff be seen by another neurosurgeon other than Dr. Tucci, I believe that plaintiff is entitled at theleast to a second opinion regarding whether further diagnostic testing might be useful in assisting plaintiff with his neck and shoulder pain. Whether defendants should be required to pay for such further diagnostic testing would naturally depend upon the outcome of such a second opinion.
For these reasons, I respectfully dissent.
This 12th day of September, 2006.
 S/_________________ THOMAS J. BOLCH COMMISSIONER